# SUTHERLAND v. KEENE.

## SAME v. WILSON.—203 S. W. (2d) 917.

Eastern Section.   January 7, 1947.

Petition for Certiorari denied by Supreme Court, June 26, 1947.

Cox, Taylor, Epps & Miller, of Johnson City, for plaintiffs in error.

Simmonds & Bowman and Nelson Swan, all of Johnson City, for defendant in error.

McAMIS, J.  In these two cases, growing out of an automobile collision and tried together below, the defend-

ant, Mrs. F. M. Sutherland, has appealed in error and assigned errors raising as the principal grounds for reversal the kinship of one of the jurors to plaintiff, Jack Keene, and that the jury improperly discussed, and were improperly influenced by, the possibility that Mrs. Sutherland carried public liability insurance on her automobile. Other assignments raise the question that the verdict, even as reduced by remittitur suggested by the trial judge, is excessive; that the undisputed proof shows that plaintiff Keene was guilty of proximate contributory negligence and that the defendant was guilty of no negligence; also that the trial judge concurred in the verdict notwithstanding a finding by him that Keene was guilty of contributory negligence and improperly undertook to compensate for the caprice and sympathy of the jury by suggesting a remittitur.

On April 15, 1946 a collision occurred at the intersection of Buffalo and Pine Streets in Johnson City between the automobile of Mrs. Sutherland, being driven by her in a westerly direction on Pine Street, and the taxicab of Ambers Wilson, one of the plaintiffs, being driven by plaintiff Jack Keene in a northerly direction on Buffalo Street.

Keene instituted suit against Mrs. Sutherland to recover for personal injuries and a separate action was instituted by Wilson, as the owner of the taxicab, to recover for damages to his taxicab. In each case Mrs. Sutherland filed a cross declaration against the respective plaintiffs to recover for personal injuries, and for property damage to her automobile. In the Keene case the jury returned a verdict for $10,000 and in the Wilson case a verdict for $300 representing damages to his taxicab.

Mrs. Sutherland moved for a new trial in each case. Her motion in the Wilson case was overruled, and in the

Keene case her motion for a new trial was overruled upon the condition that plaintiff accept a remittitur of $4,000. Keene accepted the suggested remittitur and judgment was rendered for $6,000 from which Keene did not appeal.

█ Under the facts to be outlined, we think there was no error in submitting to the jury the question of the negligence of the drivers of the two vehicles and that it was for the jury to decide whether any negligence on the part of Keene was the proximate or only a remote cause of the collision.

Keene testified that, as he approached the intersection from the south, he saw a child toss an object from the sidewalk at the northwest corner of the intersection into the street and that his attention was mainly directed to the child because he thought the child was about to get into the street in front of his cab; that he thought he was driving between 12 and twenty miles per hour; and that he did not see Mrs. Sutherland's car until he had entered the intersection when it suddenly appeared from his right and struck the taxicab about midway between the two fenders. The cab continued northwardly on Buffalo Street for 80 feet or more and overturned. Plaintiff's witness, A. G. Roark, estimated the speed of the cab at approximately 25 miles per hour.

It is not disputed that stop signs were located on Pine Street at the Buffalo Street intersection and that, by city ordinance, Pine Street was a stop street.

Plaintiffs' witness, Miss Goldie Phillips, testified that she was on the porch of a house at the corner of Buffalo and Pine Streets; that she saw Mrs. Sutherland approach the intersection driving westwardly on Pine Street; that she was making a speed of from 30 to 35 miles per hour as she entered the intersection and that she did not observe the stop sign on Pine Street. On cross-examination

she admitted that on the afternoon of the accident she had told one of Mrs. Sutherland's attorneys that she did not see the accident and made the same statement to other persons but said she made these statements because she intended to go to her home in Kentucky and because she wanted to avoid being summoned as a witness.

A. G. Roark, another witness for plaintiffs, testified that he was walking north on Buffalo Street and had just stepped off the sidewalk at the southwesterly corner of the intersection when he saw the Sutherland car approaching from the east going "real fast"; that he then stepped back on the sidewalk; that he did not see Mrs. Sutherland stop at the stop sign and that she continued into the intersection and her car struck the taxicab in the right side between the front and rear fenders.

Mrs. Sutherland testified that she stopped at the stop sign on Pine Street and continued into the intersection at about seven miles per hour after looking in both directions and seeing no cars approaching; that after she got into the intersection she looked south on Buffalo and saw the taxicab approaching at a high rate of speed; that the taxicab undertook to dodge in front of her car to avoid a collision but could not do so and struck the left front of her car. She estimated the speed of the taxicab at 50 miles per hour. It is apparent from what we have said that there is an irreconcilable conflict in the testimony. The speed limit, under the governing city ordinance, at the intersection was 15 miles per hour and there is material evidence that Mrs. Sutherland was exceeding the speed limit and that she failed to observe the stop sign. Contradictory statements made by the witness, Miss Phillips, did not destroy her testimony but went only to its weight and if it be conceded that plaintiff's testimony that he was going between 12 and 20 miles per hour con-

stitutes an admission that he was going more than 15 miles per hour, the prevailing speed limit, still it was a question for the jury to determine whether this was a proximate cause of the collision, assuming as we must, that the jury found that Mrs. Sutherland was traveling at a speed of 30 to 35 miles per hour and continued into the intersection without observing the stop sign.

■ It is settled by numerous decisions of the Supreme Court and of this court that where the undisputed evidence shows that the plaintiff has violated a traffic regulation, it is still a question for the jury as to whether his contributory negligence in doing so was a proximate or remote cause of his injuries. Among other cases see Holt v. Walsh, 180 Tenn. 307, 174 S. W. (2d) 657 and numerous cases there cited in support of the rule, including Anderson v. Carter, 22 Tenn. App. 118, 118 S. W. (2d) 891, here relied upon by plaintiffs.

But it is argued with much zeal and ability that, even if supported by material evidence, the judgments should be reversed and a new trial granted because the juror Linville is related to the plaintiff Keene within the sixth degree as computed according to the civil law. Code, Section 10007 provides: "No person can act as a juror in any case in which he is interested, or when either of the parties is connected with him by affinity or consanguinity, within the sixth degree, computing by the civil law, except by consent of all the parties."

After a hearing on this question while considering defendant's motion for a new trial, the trial judge determined that Linville was related to Keene within the seventh degree but not within the prohibited sixth degree. We here copy the chart which both parties agree correctly sets forth the relationship of Linville and Keene

through their common ancestors, Enoch and Polly Keene.

Enoch and Polly Keene
(Common Ancestors)

William Keene (Son)          James Keene (Son)
Cora Linville (Grandson)     Chas. Keene (Grandson)
I. A. Linville (Great Grandson) Plaintiff Keene (Great
                                      grandson)

In Hume v. Commercial Bank, 10 Lea 1, 5, 78 Tenn. 1, 5, 43 Am. Rep. 290, it was said: "The statutes, both in the case of judges and jurors, require that the disqualifying relationship be ascertained by computing according to the civil law, that is by counting from one party up to the common ancestor and then down to the other."

■ However, we do not have a case in this State to guide us as to how the relationship shall be computed, i.e., whether, as the learned trial judge determined in this case, only one of the parties whose relationship is to be determined shall be counted as a separate generation or whether the common ancestors shall be considered both in ascending and descending. The rule elsewhere seems to be to consider the common ancestor as a single removal or to leave out of consideration one of the parties whose relationship is to be determined. We quote:

"Every generation in lineal direct consanguinity constitutes a different degree reckoning either upward or downward. The difference in the method of the common and civil law in the computation of degrees exists only in relation to collateral consanguinity.

"Computing by the rule of the civil law, parents and children of a deceased are related to him in the first degree, but the children take in preference to the parents. Grandparents, brothers, and sisters of the deceased are related to him in the second degree, but brothers and sis-

ters, are given preference over the grandparents. The fourth degree of relationship includes first cousins, great-uncles and great-aunts, and great-great-parents. The great-great-uncles and great-great-aunts, the children of a cousin, and the children of a great-uncle or great-aunt are related in the fifth degree, while the relationship of children of second cousins is in the sixth degree." 16 Am. Jur., Descent and Distribution, Section 55, p. 826.

By constructing a chart for each of the relationships covered in the quotation it is to be noted that in each case one of the parties whose relationship is to be determined is left out of the computation or, what is the same thing, the ancestor common to both lines is considered only one degree of removal.

This is the rule followed in 24 Cyc., p. 273, where the author follows a New York case holding that one of the persons whose relationship is to be determined is excluded from consideration.

█ We conclude, therefore, that the learned Circuit Judge erred in holding that Juror Linville was not related within the prohibited degree. The question remains, Was this reversible error?

The record shows without contradiction from the testimony of both Keene and Linville that neither was conscious of the relationship until after the verdict had been returned and the jury discharged.

We think this question is concluded by the holding of the Supreme Court in Nashville C. & St. L. Railway v. Williams, 164 Tenn. 144, 46 S. W. (2d) 815, where it was said:

██ "The rule to be deduced from the authorities is that the judgment will not be reversed on appeal in error unless it can be inferred that the accused suffered injustice or injury because of the relationship; and that

bias of the juror, ignorant of the relationship until after the verdict, cannot be presumed. In other words, technical disqualification subsequently discovered and unattended by showing of bias or prejudice does not annul a verdict, especially where the complaining party was given fair opportunity by the trial judge to examine the jurors and after examination accepted the jury and proceeded to a verdict.''

The opinion cites in support of the rule announced Cartwright v. State, 12 Lea 620 and Hamilton v. State, 101 Tenn. 417, 419, 47 S. W. 695, and, although there are holdings to the contrary, the rule enunciated is in accord with the majority view. Annotations, 116 A. L. R. 680.

█ We are of opinion the present case fails within the rule announced and the assignment directed to this question must be overruled.

We next consider the assignment directed to the refusal of the trial court to grant a new trial because of alleged misconduct of the jury in discussing liability insurance carried by Mrs. Sutherland.

All of the jurors were recalled and testified at the hearing on the motion for a new trial. The strongest statement on this question was made by Juror Davidson. He testified that, at first, he favored a verdict for $5,000 in the Keene case because of contributory negligence on Keene's part but that after one of the jurors had said that it took only a few more dollars to buy $10,000 than $5,000 liability insurance that he thought Mrs. Sutherland would have $10,000 insurance and he agreed to a verdict for $10,000. He says Juror Krupnic was the one who stated that it cost only a few more dollars to buy a $10,000 policy. Krupnic positively denied making this statement.

Juror Davidson also testified that Juror Rogers said, "What are you worrying about? The insurance company is going to pay it anyway." Rogers says he heard a general discussion of insurance but he did not know who made the statement. Davidson undertook to say that he was afraid he was influenced by the discussion of insurance. All of the other jurors testified in general that they decided the case on the law and the evidence and were not influenced by the general discussion of insurance, the substance of the discussion of that question being that there was "a suspicion that Mrs. Sutherland had insurance" or that she might have insurance or that it was hoped that she had insurance with no one on the jury professing to have any knowledge on that subject.

It is to be observed from the foregoing general analysis of the testimony on this question that Juror Davidson is directly contradicted by Juror Krupnic and indirectly or impliedly contradicted by Juror Rogers. After hearing all of the testimony on this question the trial judge was evidently of opinion the evidence was insufficient to warrant a finding that defendant had been prejudiced by the discussion.

In Lunn v. Ealy, 176 Tenn. 374, 141 S. W. (2d) 893, the evidence on the hearing of the motion for a new trial was similar to the case at bar, though it is true, as appears from the opinion, that the jury had already arrived at a verdict before liability insurance was discussed. But the opinion cites, in support of the conclusion that reversible error had not been shown, Harbin v. Elam, 1 Tenn. App. 496, 499 and Bourne v. Barlar, 17 Tenn. App. 375, 378, 67 S. W. (2d) 751, 753.

In the first of these cases, Harbin v. Elam, the opinion states that the discussion was before the verdict was "returned" but we infer that the question was discussed

during the deliberations of the jury. Two of the jurors stated that if they had not supposed that defendant had liability insurance they would not have voted for a judgment against him.

In Bourne v. Barlar there was a general discussion of liability insurance, summarized in the opinion as follows: "The evidence on the question of liability insurance was vague. There were vague statements and references to liability insurance. Some of the jurors testified that they thought something was said about her having insurance, but didn't remember any positive statements that she had insurance, but supposed that she had. Some thought it would cost her a lot of money, and others believed the insurance company would have it to pay."

In Marshall v. North Branch Transfer Co., 166 Tenn. 96, 59 S. W. (2d) 520, strongly relied upon by defendant, the judgment was reversed upon uncontradicted statements by four of the jurors that they were induced to agree to a verdict for plaintiff by statements made in the jury room that the defendant was protected by insurance. In that case the court held there was an affirmative showing of misconduct affecting the result of the trial.

In the later case of Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 793, 138 A. L. R. 461, in an opinion by Mr. Chief Justice Green, reference was made to the fact that in the Marshall case there was no contradiction of the statements of the four dissenting members of the jury and also to the qualifying language of the opinion in the Marshall case that if there was a mere passing or casual reference to the fact or probability that the defendant was protected by liability insurance, the court would have been "strongly inclined" to affirm the judgment. The opinion in Thomason v. Trentham then concludes: "So far as insurance is concerned, we take it that

every intelligent juror at this date knows of the custom among those owning automobiles to carry liability insurance."

■ Under the authorities cited we are unable to say that the trial court erred in refusing to grant a new trial because of the alleged misconduct of the jury.

Under the third assignment it is insisted the trial judge did not concur in the verdict of the jury in the Keene case and, therefore, invaded the province of the · jury in attempting to compensate for what he considered the erroneous views of the jury by suggesting a remittitur —that the verdict should have been set aside and a new trial granted.

This conclusion of counsel for defendant is drawn from the circumstance that in the Wilson case the jury returned a verdict for much less than the actual cost of repairing the taxicab, evidently upon the theory that Keene was guilty of remote contributory negligence in the operation of the taxicab, and from remarks of the trial judge in passing upon the motion for a new trial. We quote the following from these remarks: "The difference in the method adopted by the jury in these twin cases in reaching their verdict, as the Court believes, evidences sudden impulse of the mind accounted for, in my opinion, by the appearance of the plaintiff in his uncomfortable condition, being in the brace unable to turn or move his head . . . the jury having found in the Wilson case evidently that he was guilty of negligence which resulted in lessening the damages of Mr. Wilson for his car, the same rule should be adopted in her case, in the Keene case, in keeping with it, and I am of the opinion that the verdict should be reduced from $10,000 to $6,000 and unless the plaintiff accepts that, a new trial will be granted. Otherwise, the motion will be sustained."

In another portion of his remarks, the trial court said it was "evident that Mr. Keene was in violation of a city ordinance in the way and manner that he was driving the car at the time of the accident and the jury should have, if it didn't, considered that fact and reduced his recovery in keeping with his negligence. . . . Sympathy may be considered as compassion the same as caprice. Caprice is a sudden impulse of the mind, a whim or a freak."

We think it is evident that the learned trial judge was of opinion Keene was guilty of remote contributory negligence and was of the further opinion that the jury had so concluded. They had given proper effect to the negligence of Keene in reducing the recovery in the Wilson case but, because of sympathy, had declined to do so in the Keene case.

Under Code, Section 8987, the trial judge is authorized to suggest a remittitur when, in his opinion, the verdict is so excessive as to indicate "passion, prejudice, corruption, partiality, or unaccountable caprice on the part of the jury."

The trial judge concluded that the amount of the verdict indicated or could be accounted for by sympathy on the part of the jury. In other words, the jury was biased in plaintiff's favor or showed partiality and passion in rendering its verdict. Passion may be defined as a violent agitation of mind or a strong and deep feeling or excitement and we think a jury verdict which is the product of sympathy falls within the statute and can be reduced by remittitur.

It is argued that the trial judge did not concur in the verdict of the jury but found plaintiff guilty of proximate contributory negligence. We think the remarks of the trial judge show that he kept in mind the

distinction between remote and proximate contributory negligence. It is the usual practice to reduce the recovery by remittitur where the court finds the plaintiff guilty of remote but not proximate contributory negligence. Nashville, C. & St. L. Railway Co. v. White, 158 Tenn. 407, 420, 15 S. W. (2d) 1. The failure of the jury to give effect to remote contributory negligence on the part of the plaintiff or rendering a verdict in such an amount as to indicate passion, prejudice or caprice is not such corruption as entitles the defendant to a new trial. Reeves v. Catignani, 157 Tenn. 173, 7 S. W. (2d) 38.

We find no error in the judgment and it results that all assignments must be overruled and the judgment affirmed, with costs.

Hale and Burnett, JJ., concur.