FRANCE v. NEWMAN.—248 S. W. (2d) 392.

Eastern Section.   November 14, 1951.

Petition for Certiorari denied by Supreme Court, March 7, 1952.

Campbell & Campbell, of Chattanooga, for plaintiff in error.

Harry Berke and Wm. R. Ferguson, both of Chattanooga, for defendant in error.

HOWARD, J.   This action for damages for personal injuries grew out of an automobile accident which occurred on February 2, 1950, just outside the corporate limits of the City of Chattanooga, on the Hixon Pike, the principal thoroughfare to the Chickamauga Dam, Du Pont Plant and other points north of the Tennessee River, in the north-east section of Hamilton County. At the time of the accident the plaintiff, Dorothy Newman, was riding with the defendant, James France, as a guest in his automobile. The accident occurred on a curve when the defendant's automobile, traveling in the general direction of Chattanooga, ran from the right to the left side of the road and struck an approaching automobile, owned and operated by Floyd Mahan, which at the time was traveling at an estimated speed of from 25 to 30 miles per hour.   Defendant's automobile struck the Mahan car with such terrific force that the rear wheels and

housing of said car were knocked completely from under it, and thereafter defendant's car went over an embankment and overturned, a distance of approximately 180 feet from the point of the collision.

Plaintiff's declaration charged in substance that she was injured seriously, lost much time from her work and incurred heavy medical expenses as result of her injuries, all because of defendant's negligence. She further alleged that defendant failed to slow the speed of his car as she requested, when the windshield became fogged, and that he failed to observe a right-hand curve; that because of defendant's failure to keep a proper lookout, his car went straight ahead to the left of the center of the road and crashed into the approaching car. She also alleged that defendant violated Sec. 2682 of the Code of Tennessee pertaining to reckless driving, excessive speed, etc.

Defendant filed a plea of general issue to the declaration, and at the conclusion of all the proof the defendant moved for peremptory instructions, which the Court overruled. The jury returned a verdict for the plaintiff for $5,000, which verdict was approved by the Court and judgment duly entered. Motion for a new trial having been filed and overruled, the defendant perfected this appeal, assigning numerous errors which will hereinafter be considered.

It appears that plaintiff and defendant did not know each other prior to the night of the accident; that they met at a bus stop on Rossville Boulevard when the defendant offered plaintiff and her friend, Mrs. Nellie Shirley, a ride to town. On their way into town it was suggested that they stop for something to eat, and because plaintiff had previously worked as a waitress at Lowe's Drive-In on McCallie Avenue, it was decided that

they go there for sandwiches. In their general conversation at the Drive-In the subject of employment arose, the plaintiff stating that she had just obtained a job as a waitress at the Paradise Inn, on Rossville Boulevard, near the bus stop where defendant had picked them up, and that she was to go to work the next day. During the conversation the defendant, who was employed at the Du Pont Plant, asked plaintiff why she didn't make application for a job there, as the Plant wanted good employees. Plaintiff replied that she didn't know anything about the Du Pont Plant or where it was located, and defendant's offer to drive her to the Plant that night and show her the way was thereupon accepted. After leaving the Drive-In Mrs. Shirley was taken to her home on Cherokee Boulevard in North Chattanooga, and the plaintiff and defendant proceeded to the Du Pont Plant, reaching there about 11:30 P.M., where they remained for about 45 minutes before deciding to return to their homes. It was on their return to Chattanooga that the accident occurred.

Subsequent to the accident, before anyone else arrived, Mr. William Ferguson, an attorney of the Chattanooga Bar, passed the scene, and noticing there had been a wreck, offered his assistance. He suggested that it might be well for the parties to see a doctor and asked if either of them had a preference. On being told that they did not, Mr. Ferguson then suggested that he drive them to see Dr. Sidney Wood, whose home was in St. Elmo, several miles from the scene of the accident.

On reaching Dr. Wood's home about 2:30 A.M., the plaintiff was examined, and the Doctor gave her a sedative or hypodermic and told them that she could go home. Mr. Ferguson took plaintiff and defendant back to town,

letting them out of his car near plaintiff's home in North Chattanooga.

Prior to and at the time of the accident plaintiff had a paper route on which she delivered the Chattanooga Times, a morning newspaper, to 95 subscribers, and after getting out of the Ferguson car plaintiff told the defendant that it was time for her to start delivering the papers. The defendant decided to accompany her and walked the entire route of about 2 miles with her. Upon their return they stopped for coffee in a restaurant only a few blocks from the plaintiff's home, at which place defendant left her to return to his home. Shortly after his departure plaintiff fainted and fell on the floor of the restaurant, and her mother, upon being notified of her daughter's condition, sent plaintiff's brother for her and she was taken to her home. Three days later Dr. Wood was called, and upon reaching plaintiff's home he found her in a comatose or stuporous condition and she was immediately sent to Erlanger Hospital, where she remained under treatment for 7 days before being discharged.

Assignments 1 to 5 and 15 and 16 aver in substance that there was no evidence to support the verdict of the jury, and that the Court erred in refusing to direct a verdict for the defendant. While these assignments involve a review of the evidence, such review "requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. Johnston v. Cincinnati, N. O. & T. P. R. Co., 146 Tenn. 135, 149, 240 S. W. 429; Finchem v. Oman, 18 Tenn. App. 40, 49, 50, 72 S. W. (2d) 564, 570." D. M.

Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, 901.

According to the plaintiff's testimony, it had been raining and was misty on the night of the accident, and considerable fog had gathered on the windshield of defendant's car; that just previous to the accident she had noticed an increase in the speed of his car and requested him to slow down, which he refused to do. She testified that the last thing she remembered on the night of the acident, before being knocked unconscious, was defendant's car going over an embankment, and that she did not regain consciousness until several days later at the hospital. She stated that she did not remember anything about being taken to Dr. Wood's home by Mr. Ferguson, did not remember delivering the papers several hours after the accident, or anything else that happened during the time she was unconscious.

Floyd Mahan, with whose car the defendant's car collided, estimated the defendant's speed at 50 miles per hour and stated that defendant's automobile struck his car with considerable force. He said that the defendant admitted shortly after the accident that it was his fault.

Defendant admitted that he was driving from 35 to 40 miles per hour when the accident occurred, but stated that he was on the lookout ahead; that as he approached the curve in the road and got within about 10 feet of the Mahan car he discovered that his steering apparatus was broken and that he could not properly steer his car; that upon turning the steering wheel to the right in an effort to avoid the collision the car went straight ahead into the approaching automobile. He stated that he had not previously noticed anything wrong with his car, and that it had just recently gone through the Chattanooga Safety Lane. He denied that plaintiff requested him to slow

down or that they ever discussed the speed of his car, and stated that plaintiff appeared to be normal, following the accident.

Plaintiff introduced W. W. Hamby, an automobile mechanic with 15 years' experience, who examined the defendant's car at the scene of the accident. This witness stated that he found all the steering rods properly connected; that the front wheels would turn, and that he didn't find anything wrong with the steering apparatus.

It appears that at the time of the accident the defendant was approaching a slight upgrade in the road, and that after the impact his car went a distance of 180 feet before overturning. This indicates that his car was traveling at a pretty high rate of speed, and the jury could reasonably conclude therefrom that the defendant did not have his car under proper control.

As will be observed from the evidence, there were several controverted issues which involve (1) the speed of defendant's car, (2) the condition of the steering apparatus, (3) whether or not plaintiff requested defendant to slow down, (4) whether or not defendant's car was being operated in a negligent manner, and (5) whether or not defendant exercised ordinary care for plaintiff's safety. Thus jury questions were presented, and we think there was ample evidence adduced by plaintiff to support the jury's findings on all the foregoing questions. Where there are conflicts in the proof, issues of negligence and contributory negligence are for the jury. Tubb v. Boyd, 13 Tenn. App. 432; Duling v. Burnett, 22 Tenn. App. 522, 124 S. W. (2d) 294; Patillo v. Gambill, 22 Tenn. App. 485, 124 S. W. (2d) 272; McBroom v. S. E. Greyhound Lines, 29 Tenn. App. 13, 193 S. W. (2d) 92; Campbell v. Campbell, 29 Tenn. App. 651, 199 S. W. (2d) 931. Likewise, questions of ordinary care and prox-

imate cause are for the jury. Southeastern Greyhound Lines v. Groves, 175 Tenn. 584, 136 S. W. (2d) 512, 127 A. L. R. 378; Campbell v. Campbell, 29 Tenn. App. 651, 199 S. W. (2d) 931; Fields v. Gordon, 30 Tenn. App. 110, 203 S. W. (2d) 934.

■■ Assignments 7, 8, 9, and 13 complain of the trial court's action in charging the jury, over defendant's objection, that plaintiff might recover for aggravation of a pre-existing illness, when her declaration contained no allegations to that effect. The portion of the charge complained about reads as follows:

"She could not recover gentlemen of the jury, in the event she is entitled to recover, she could not recover for any condition that existed, any trouble that she had previous to this accident, but if you find that she is entitled to recover, and if she had some previous condition, and there was an aggravation of that previous condition, you could take into consideration such aggravation."

It appears that the plaintiff had for several years prior to the accident suffered from narcolepsy, a disease defined by Dr. McCravey as a "transit loss of consciousness manifested by sleep", and by Blackiston's New Gould Medical Dictionary as "uncontrollable tendency to attacks of deep sleep of short duration." That previous to the accident she had frequently gone to sleep while riding on buses and while sitting at tables eating her meals, and that she had gone to New York for treatments. These particular matters were first brought to light on cross-examination of plaintiff and her witnesses by defendant's attorney, who had apparently made a very thorough investigation of plaintiff's past life. After the above matters were brought out the plaintiff testified on redirect examination, without objection, that her con-

dition had grown much worse since the accident, and that she had slept as long as 2 or 3 days at a time, and that she had great difficulty keeping awake and remembering names.

In her declaration plaintiff sought damages only for the injuries she sustained in the accident, and matters regarding her pre-existing disease would not, more than likely, have been disclosed had it not been for the aggressiveness on the part of the defendant. Generally, plaintiff's proof of damages must in substance correspond to the allegations of the declaration, but where a defendant develops facts which at the time appear to be helpful to him, he will not thereafter be permitted to complain because the court correctly charged the law applicable thereto. We think that a defendant may waive the rule requiring specific allegations of damages in plaintiff's declaration, where evidence to furnish the basis for recovery therefor is admitted without objection, as was done in the present case. It is the duty of the trial court to give instructions on damages applicable to the facts shown, which will enable the jury to understand and act upon the evidence. Walgreen Co. v. Walton, 16 Tenn. App. 213, 64 S. W. (2d) 44.

█ █ Assignments 10 and 11 complain of the Court's refusal to charge defendant's requests (1) that plaintiff could not recover for illnesses or diseases she had prior to the accident, and (2) that it was the duty of plaintiff, if she saw that defendant was not taking proper precautions for her safety, to give some warning of the danger and her failure to do so would be negligence. We find no error in the court's refusal to give the foregoing requests, because the substance contained therein had already been amply covered in the general charge. To deny a special request, the substance of which has been

covered in the general charge, is not error. Jones v. Noel, 30 Tenn. App. 184, 204 S. W. (2d) 336; Graham v. Cloar, 30 Tenn. App. 306, 205 S. W. (2d) 764; Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450; Carman v. Huff, 32 Tenn. App. 687, 227 S. W. (2d) 780. And assignment 12, requesting that the court charge that if the jury found that plaintiff had sworn falsely about one material fact in issue, it was at liberty to disregard her entire testimony, was properly overruled.

██ Assignment 6 complains that the verdict was so excessive as to indicate passion, prejudice, and caprice on the part of the jury. According to the medical testimony, plaintiff sustained injuries to her back, head, chest, right elbow, right thumb and left ankle. Dr. Wood stated that when he first examined her at his home she appeared to be in a daze, and that when he saw her three days later her condition was much worse. He said that she suffered a brain concussion and that it was necessary to remove some of the fluid from her spine to relieve pressure on the brain. He stated that in his opinion her back showed very little improvement at the time of the trial. Dr. McCravey stated that plaintiff's condition improved after removing some of the spinal fluid, and he diagnosed her injury as a cerebral concussion, mild, and that the headaches from which she later suffered were due to some swelling of the brain, which sometimes follows a head injury. He said he examined plaintiff 8 weeks after the accident and that she had tenderness in the lumbar, 4th and 5th, of the lower back.

While there was no proof as to plaintiff's earnings at the time she was injured, she testified that in addition to having the paper route she had a job at the Paradise Inn and was to start to work the next day. She said that

she was unable to work for more than 4 months after the accident, and that she had not been able to work regularly since, because of the pains in her back and head; that it was necessary for her at times to take medicine prescribed by Dr. McCravey to keep her from going to sleep on the job. Her hospital and medical bills totaled more than $400.

While no mathematical rules of computation have ever been formulated making verdicts and judgments uniform in negligence cases, it is the duty of the courts to take into consideration the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases. Town of Clinton v. Davis, 27 Tenn. App. 29, 177 S. W. (2d) 848; Foster & Creighton Co. v. Hale, 32 Tenn. App. 208, 222 S. W. (2d) 222; 15 Am. Jur. Sec. 205, pp. 621, 622.

In Town of Clinton v. Davis, supra [27 Tenn. App. 177 S. W. (2d) 853], Judge Burnett, speaking for the Eastern Section of this Court, said:

" 'The complaint in the case at bar is not that the verdict was corrupt either actually or inferentially, but that it was so large as to indicate that it was influenced by passion, prejudice or caprice; in other words, not that it was a dishonest verdict, but that it was an excessive verdict.'

" 'The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence.' [Reeves v. Catignani] 157 Tenn. [38], page 39." 39."

Under assignment 14, it is contended that the jury was guilty of misconduct in its deliberations in dis-

cussing automobile liability insurance; that during the deliberations one of the jurors remarked that if a judgment were rendered against the defendant, he might not have to pay it.

Of the five jurors questioned by the defendant regarding the jury's deliberations, only two testified that the matter of insurance was discussed. These two jurors stated that someone made the remark during the deliberations that if a judgment were rendered for the plaintiff, the defendant might not have to pay it, but that no one stated as a fact that defendant had insurance. All five of the jurors stated that they decided the case upon the evidence and law as charged by the court. While it is highly improper for a jury in its deliberations to discuss the probability of defendant having liability insurance on his car, the appellate courts of this state have previously held that a new trial is not warranted, where the jury discussed generally the mere probability of defendant having insurance. Harbin v. Elam, 1 Tenn. App. 496; Whitfield v. Loveless, 1 Tenn. App. 377; Bourne v. Barlar, 17 Tenn. App. 375, 67 S. W. (2d) 751; Stanford v. Holloway, 25 Tenn. App. 379, 157 S. W. (2d) 864; Sutherland v. Keene, 29 Tenn. App. 303, 203 S. W. (2) 917; Lunn v. Ealy, 176 Tenn. 374, 141 S. W. (2d) 893; Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 793, 138 A. L. R. 461.

In Bourne v. Barlar, supra [17 Tenn. App. 375, 67 S. W. (2d) 753;], the court said:

"We think all these statements about insurance were improper, but did they or were they liable to affect the verdict? We think not. In this enlightened age it is common knowledge, and everybody knows, that almost every owner of an automobile carries liability insurance, hence everybody knows

how it is obtained and the manner of protection. Each juror knows that it is unjust and wrong to award a verdict against a defendant simply because he may have insurance and when he does so he stultifies himself and is unworthy to sit as a juror. Each juror who has intelligence enough to be a juror knows that when he, by his verdict, unjustly takes money from a defendant, he does him a very great wrong.

" 'Insurance against loss or damage from accident or negligent conduct is so universal that jurors, as well as courts, must be assumed to be cognizant of this fact, and hence evidence thereof will not be as likely to create prejudice as it might have been before this method of business became so universal.' "

▆▆▆ Finally, it is urged that it was error for the jury in its deliberations to consider the question of plaintiff's attorneys' fees before arriving at the verdict. We are unable to consider this question because the matter complained of was not presented to the trial court in defendant's motion for a new trial. It is a well settled rule of this court that errors will not be considered which were not called to the attention of the trial court. Tennessee Coach Co. v. Henley, 15 Tenn. App. 183; Simpson v. Harper, 21 Tenn. App. 431, 111 S. W. (2d) 882; Rule 11, subsec. (4), Rules of Court of Appeals.

Accordingly, all assignments of error will be overruled and the judgment below will be affirmed at defendant's costs.