**Alberta L. PRICE, Plaintiff-Appellee,**

v.

**FIRESTONE TIRE AND RUBBER COMPANY, Defendant-Appellant.**

**No. 15146.**

United States Court of Appeals
Sixth Circuit.

Aug. 29, 1963.

J. H. Doughty, Knoxville, Tenn., and Henry Brainard, Akron, Ohio (Hodges, Doughty & Carson, Knoxville, Tenn., of counsel), for appellant.

R. Hunter Cagle, Knoxville, Tenn. (Ben F. McAuley, Knoxville, Tenn., W. Buford Lewallen, Leo W. Grant, Jr., Clinton, Tenn., on the brief), for appellee.

Before CECIL, Chief Judge, MILLER, Circuit Judge, and BROOKS, District Judge.

CECIL, Chief Judge.

Alberta L. Price, as plaintiff, brought this action in the United States District

Court for the Eastern District of Tennessee, Northern Division, on behalf of herself and minor children,[1] for damages for the death of her husband alleged to have been caused by the negligence of the defendant, Firestone Tire and Rubber Company. Jurisdiction was invoked by reason of diversity of citizenship. The case was tried to a jury and a verdict was returned in favor of the plaintiff in the amount of $25,000. Judgment was entered on the verdict and the defendant appealed.

Frank Thomas Price, the plaintiff's decedent, was killed by the explosion of a tire which he was trying to install on a truck owned by Herbert O. Kendrick for whom he worked. The tire was mounted on a Goodyear split rim and is alleged to have exploded as a result of a misalignment of its lock ring or rim, a device designed to hold the tire in place.

The defendant company operated a place of business in Knoxville, Tennessee, known as Firestone Stores, where it was engaged in recapping automobile and truck tires. The plaintiff claims that the defendant recapped the tire involved in the explosion for Mr. Kendrick and delivered it to him mounted in a defective condition. It is charged that the defendant negligently mounted the tire on the rim and negligently failed to insert the lock ring in a complete locking position. This constituted the misalignment of which complaint is made.

The defendant denied negligence on its part and alleged that the accident resulted from independent, intervening causes. It also charged that the deceased was guilty of contributory negligence as a matter of law.

The issues presented on this appeal are purely factual. They involve the questions of whether the trial judge should have directed a verdict for the defendant on the ground that there was a failure to show the accident was proximately caused by the defendant's negligence or that it was proximately caused by the deceased's negligence as a matter of law.

■■ In passing on a motion for a directed verdict in favor of the defendant, the trial judge must view the evidence in the light most favorable to the plaintiff. He does not weigh conflicting testimony. Brunswick-Balke-Collender Co. v. Foster Boat Co., 141 F.2d 882, 884, C.A. 6; Hamilton Foundry & Mach. Co. v. International Molders & Foundry Workers Union of North America, 193 F.2d 209, 213, C.A. 6, cert. denied, 343 U.S. 966, 72 S.Ct. 1060, 96 L.Ed. 1363; Patterson v. Pennsylvania R. R. Co., 238 F.2d 645, 647, C.A. 6; Johnston v. Cincinnati, N. O. & T. P. R. R. Co., 146 Tenn. 135, 149, 240 S.W. 429, 433; Rose & Co. v. Snyder, 185 Tenn. 499, 508, 206 S.W.2d 897, 901; France v. Newman, 35 Tenn.App. 486, 248 S.W. 2d 392; Southeastern Steel v. Luttrell, 48 Tenn.App. 522, 348 S.W.2d 905; O'Connor v. Pennsylvania R. R. Co., 308 F.2d 911, 914–915, C.A. 2. Only if reasonable minds could arrive at but one conclusion and that in favor of the defendant should a verdict be directed. "Where such evidence on an issue is so overwhelmingly against the plaintiff's contention as to leave no room to doubt that a fact is not what the plaintiff claims it to be and such fact is essential to plaintiff's cause of action, the Court is authorized as a matter of law to direct a verdict for the defendant." Lovas. v. General Motors Corp., 212 F.2d 805, 807, C.A. 6; Jackson v. Lowenstein, 175 Tenn. 535, 136 S.W.2d 495; O'Connor v. Pennsylvania R. R. Co., supra.

■ This being a diversity of citizenship case, the substantive law of Tennessee is applicable. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. It has not yet been determined whether the state or federal test of sufficiency of evidence to support a verdict is applicable in diversity cases. Dick v. New York Life Ins. Co., 359 U.S. 437, 445, 79 S.Ct. 921, 3 L.Ed.2d 935. However, it is not material here-

---

1. Tennessee Wrongful Death Statute, T.C.A. § 20–607 (C.Supp. 1962).

for it appears that the federal rule and the Tennessee rule are the same.

■ An examination of the record discloses that there was ample evidence from which the jury could find that the defendant mounted the tire in question on the rim, that it mounted it negligently by not having the lock ring properly seated, that it delivered the tire to Kendrick with the lock ring in a misaligned position and that the negligence of the defendant, in delivering the tire with the lock ring improperly seated, was the proximate cause of the explosion and the death of plaintiff's husband. Of course, there is evidence which if believed would exonerate the defendant from the charge of negligence. However, it is the province of the jury to determine from conflicting evidence what it will believe and accept. The function of the reviewing court is only to determine if there is evidence upon which reasonable persons might find the issues in favor of the plaintiff.[2] We find no error on the part of the trial judge in finding that there was sufficient evidence upon which to submit the issue of the negligence of the defendant to the jury.

On the day of the accident, Kendrick had three trucks whose drivers were working together. The drivers were Claude Ladd, Eugene Preston Scarboro and Frank Thomas Price. Just prior to the accident they had gone to the strip mine of Claude Gibson at Jellico where their trucks were loaded with coal. As they left the mine all three trucks stalled and they had to be "shoved" twice with a bulldozer. At this time Scarboro was first, Ladd second and Price last.

After they left the mine, Scarboro had a flat tire. The three drivers took the spare off of the end gate of Ladd's truck and put it on Scarboro's truck. His flat was then hung on Ladd's truck. They proceeded on to Sharp's, a truck stop, where Price observed that Ladd had a flat tire on the inside right rear wheel. The men ate lunch at Sharp's and then undertook to change Ladd's tire. They took the spare tire off of the rear of Price's truck to install on Ladd's truck. This is the tire that exploded.

The defendant claims that the misalignment of the rim upon which this tire was mounted could have been caused by the bulldozer when it "shoved" Price's truck out of its stalled positions. This is one of the alleged independent, intervening causes of the accident. It is a circumstance to be considered by the jury but there is no direct evidence to support the claim. Ladd testified that when the spare tire was taken off of Price's truck he examined it for any possible damage that might have been caused by the bulldozer and found none. There is some testimony, by expert witnesses called by the defendant, that there were marks on the lock ring that might have been caused by the bulldozer's blade.

■ Another independent, intervening cause argued by counsel for the defendant is that Price struck the misaligned lock ring with a hammer. This alleged act is the basis of defendant's claim that the deceased was guilty of contributory negligence as a matter of law which proximately caused his death. Whether such an act would constitute an independent, intervening cause or contributory negligence as a matter of law are so closely related that we will consider it in connection with the charge of contributory negligence.

When the tire exploded only Price's fellow workmen, Scarboro and Ladd,

2. "While these issues involve a review of the evidence, such review is not to determine where the truth lies or to find the facts, that not being our province in jury cases. It is only to determine whether there was any substantial evidence to support the verdict; and it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." Rose & Co. v. Snyder, 185 Tenn. 499, 508, 206 S.W.2d 897, 901; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520.

were present. There is no direct evidence that Price struck the lock ring with a hammer. He knew that it was dangerous to strike a lock ring when the tire was inflated and he was warned of this danger by both of his companions. Price had previously had a similar warning from Virgil Dykes, a service station operator.

Ladd was called as a witness on behalf of the plaintiff. He testified that Price got a hammer out of his truck but that he did not know what he did with it. After the accident, Ladd found the hammer with a broken handle on top of his truck. Price was standing within a foot of the tire with the hammer in his hand when Ladd last saw him before the accident. At this point, Ladd went to get another "scotch" to put under the truck wheel.

Scarboro was called as a witness on behalf of the defendant. He testified that he and his companions decided against deflating the tire to fix the lock ring for the reason that Sharp's place did not have enough pressure to "air up" one of these truck tires. Price then got a hammer from his truck. Scarboro identified the hammer found on the top of Ladd's truck with the broken handle as the one Price got out of his truck. He told Price it could be dangerous to beat on a lock ring with a hammer and Price said he "knowed it." Scarboro did not see Price hit the lock ring. He heard a tapping sound two or three times as though metal was striking metal. He thought Price was "tamping" on the push bar at the rear of the truck. Scarboro went to the side of the truck and looked under it for grease leaks and at this time Price was still standing behind the truck. When he heard the tapping sound he heard something pop. He looked around and saw Price lying on the ground beside Sharp's restaurant. He moved away from where he was and the rim hit about where he had been standing. From five to ten minutes elapsed between the time Scarboro told Price it could be dangerous to hit the lock ring and the time he heard the popping noise.

Mr. Gerberth, an expert, called as a witness by the defendant, testified that he would not even reach his hand inside to take the valve core out of a tire of this kind that was misaligned a quarter of an inch and inflated to a hundred pounds of air pressure. He would be afraid it would blow up. Ray Walter Holland, an expert witness called by the defendant, testified that there were hammer dents on the lock ring. He said "there is dents of all sorts, * * *." Mr. MacKusick, another expert called by the defendant, said with reference to little indentations on the lock ring: "These small ones, here, probably from hammer blows." He qualified this then by saying, "Hammer blows, hitting rocks or something of that nature." Mr. Kendrick testified that there was no evidence of fresh scraped metal on the lock ring.

The jury might have drawn an inference from the evidence on this subject that Price did strike the lock ring with a hammer. However, it cannot be said that the only inference a reasonable person could draw would be that the lock ring was struck with a hammer by Price. The evidence presented a disputed question of fact and the trial judge was right in submitting the issue of contributory negligence to the jury.[3]

The jury was instructed on the subjects of negligence, contributory negligence and assumption of risk. No ob-

---

3. "Where the evidence is conflicting or contradictory, the court does not attempt to judge its weight or to judge the credibility of the witnesses giving such testimony. In considering a motion by the defendant for a directed verdict the Court assumes the truth of the evidence in support of the facts essential to the plaintiff's claim together with all the inferences that justifiably could be drawn therefrom. * * *

But where uncertainty as to the facts arises from a conflict in the testimony, or because fairminded men will honestly draw different conclusions from undisputed facts, the question is not one of law but of fact to be settled by the jury." Lovas v. General Motors Corp., 212 F.2d 805, 807, C.A. 6; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

jections were made to those instructions. We are of the opinion that there was evidence on all of the issues in the case that required submission to the jury.

The judgment of the District Court is affirmed.