BOURNE v. BARLAR.—67 S. W. (2d) 751.

Middle Section.  January 14, 1933.

Petition for Certiorari denied by Supreme Court, April 8, 1933.

Bennett Eslick and J. B. Wilkes, both of Pulaski, for plaintiff in error, Jessie Carr Bourne.

Jones & Wagstaff and David Rhea, all of Pulaski, for defendant in error, Jerome Barlar.

CROWNOVER, J.   This was an action by Jerome Barlar, a minor, by his next friend, against Miss Jessie Carr Bourne, for injuries sustained when defendant's automobile ran into the bicycle on which he was riding.

Defendant denied that she ran into plaintiff; she stated that the accident was unavoidable; that the plaintiff had run out from behind the garage at his home, and had run into her.

The action was tried to the court and jury and resulted in a verdict for $3,000 in favor of the plaintiff, and judgment was accordingly entered.

The defendant's motion for a new trial was overruled, and she has appealed in error to this court, assigning twenty-six errors, which, in substance, raise but five propositions:

(1)   The plaintiff was guilty of contributory negligence.

(2)   The accident was unavoidable.

(3)   The court erred in refusing to charge defendant's special requests.

(4)   The verdict is so excessive as to indicate passion, prejudice, and caprice on the part of the jury.

(5)   The jury was guilty of misconduct.

Late in the afternoon, between 4 and 5 o'clock, on November 3, 1930, Miss Bourne was driving in her automobile on the Cornersville Pike toward Pulaski, in Giles county, Tennessee. When she came near the residence of J. C. Barlar, she passed a Chevrolet coupe automobile going in the opposite direction. She saw a wagon in front of her, going in the direction she was going; she decided to pass it and started to go around it on the lefthand side of the road, which road was not wide and had been recently scraped by the highway department. There was some loose gravel along the side of the road. She turned out behind the wagon and started to go around it. As she was nearly past the wagon, she struck the plaintiff, wrecked his bicycle, broke his left arm above the elbow and his left leg above the knee, from which injuries he was confined to the hospital for approximately a month, and then at his own home for almost another month, and has since then been forced to use crutches most of the time.

1.   We think that the first proposition, that the boy was guilty of contributory negligence, must be overruled. There was a sharp disagreement between the plaintiff and the defendant as to the

way that the collision took place. The plaintiff said that he was passing by his home on his bicycle when the defendant turned out from behind the wagon and struck him. The defendant strenuously denied this, and said that plaintiff dashed out of the lane at his home onto the highway and was injured as a result of his own contributory negligence which caused the accident. Each side produced witnesses to prove the respective contentions, but the jury accepted the version of the plaintiff and returned the verdict for him.

It is admitted that there are two irreconcilable theories of how the accident happened; that if the statements of the plaintiff and his witnesses are true, then the statements of defendant and her witnesses are untrue, and vice versa. In such a situation the case had to be submitted to the jury, and the trial judge rightly allowed the jury to decide, and we are bound by the verdict. Tubb v. Boyd, 13 Tenn. App., 432. Hence, the first assignment must be overruled.

2. We think that the second proposition, that the accident was unavoidable, must be overruled. The jury returned its verdict that the defendant was the last or moving cause of the accident by deciding for the plaintiff against the defendant. There was a sharp conflict in the evidence; the judge perceived this fact and proceeded to give a full charge on the subject to the jury as follows:

"Now if you find that the collision occurred in this way and that the plaintiff rode his bicycle on the highway directly in front of the defendant and his appearance was so sudden and unexpected that in the exercise of ordinary care and prudence she could not avoid the collision and injury, then she would not be liable. However short the interval of time may have been between his appearance upon the roadway and the time of the collision, it was the duty of the defendant to exercise ordinary care and prudence to stop the car or to do what she could to avoid a collision, and if she did all that she could in the exercise of ordinary care and prudence to avoid the collision and injury, then she would not be liable. She could not be required to do the impossible in order to avoid liability."

There was conflicting evidence about the way the collision occurred. Either of the defendant's theories of the case—that the accident was unavoidable, or that the plaintiff was guilty of contributory negligence—would have been sufficient to bar a recovery, if supported by the evidence. But these questions were properly submitted to the jury; and, by their verdict, they have rejected the theory that the accident was unavoidable. We must therefor overrule this proposition.

3. The assignments complaining of the court's refusal to charge defendant's special requests must be overruled for the reasons that those material to the issues had been sufficiently covered in

the general charge, and the others were not relevant to or consistent with defendant's theory of the case.

■ 4. The assignment that the verdict was excessive must be overruled. We do not think that the verdict was excessive. The plaintiff suffered a fracture of the left arm and a comminuted fracture of the femur or thigh. He was badly bruised and suffered a great deal. He was in the hospital for approximately four weeks, and for the greater part of that time was lying on his back and had his leg in a Buck Extension, a splint elevated at an angle. He had to be given morphine while confined in the hospital to ease his pain. After he was removed from the hospital, he had to remain at home in a cast for almost two months. After he left his bed, it was found that his left leg was an inch and a half shorter than the other leg. This shortening of the leg causes a tilting of the pelvis, which will in time cause a slight curvature of the spine, which will greatly weaken and incapacitate the plaintiff all of his life, leaving him permanently crippled.

When he was brought to the hospital, it was discovered that the periosteum, or covering of the bone, was lacerated. Upon examination with the floroscope it was found that the bone of the femur was shattered; that there was a piece of bone loose from the main bone, a piece which the doctors were unable to place back into position. According to the surgeon's testimony, this will probably necessitate another operation, since it is an unhealthy condition, which in some instances leads to tuberculosis of the bone.

The boy continues to suffer with his arm. He had a large callous around the fracture, and the action of the muscles over the callous causes pain. The movement of the arm is not as free as it was before. There is some atrophy of the muscles in the arm and also in the leg.

This is the way the doctor finally summed up the plaintiff's condition:

"You have a tilting pelvis and probable deformity through the pelvis to accommodate it; the bone will not grow in length with the other bone; when you have a shortening, as a general rule, it is permanent; the pelvis will adjust itself but you will have a deformity; that is liable to cause some pain from the muscles in the back."

Taking everything into consideration, we do not think that the verdict of the jury was excessive. Larger verdicts must be allowed for permanent than for temporary injuries, hence this assignment must be overruled.

■ 5. The assignment that the jury was guilty of misconduct in hearing statements that defendant had liability insurance, and the court erred in not ordering a new trial for this reason, is not well made. It is insisted that a new trial should have been granted for

the reasons: First, because such statements were irrelevant; and, second, they were very prejudicial to the defendant. Of course, irrelevant statements about the case in the jury room are highly improper, and should not be tolerated by the courts, and those guilty should be punished for contempt; but they do not constitute reversible error unless they are liable to prejudice the jury and to affect their verdict. The evidence on the question of liability insurance was vague. There were vague statements and references to liability insurance. Some of the jurors testified that they thought something was said about her having insurance, but didn't remember any positive statements that she had insurance, but supposed that she had. Some thought it would cost her a lot of money, and others believed the insurance company would have it to pay.

We think all these statements about insurance were improper, but did they or were they liable to affect the verdict? We think not. In this enlightened age it is common knowledge, and everybody knows, that almost every owner of an automobile carries liability insurance, hence everybody knows how it is obtained and the manner of protection. Each juror knows that it is unjust and wrong to award a verdict against a defendant simply because he may have insurance and when he does so he stultifies himself and is unworthy to sit as a juror. Each juror who has intelligence enough to be a juror knows that when he, by his verdict, unjustly takes money from a defendant, he does him a very great wrong.

"Insurance against loss or damage from accident or negligent conduct is so universal that jurors, as well as courts, must be assumed to be cognizant of this fact, and hence evidence thereof will not be as likely to create prejudice as it might have been before this method of business became so universal." 56 A. L. R., 1548; Marion Construction Co. v. Steepleton, 14 Tenn. App., 148.

"It appears almost farcical, in these days, when it is known to every man almost, qualified to sit on a jury, that most corporations dealing with the public, and many individuals, are insured in certain sums against liability for accidents, to hold that such insurance is a mystery from which the veil of secrecy should never be lifted, and that, if it is whispered to the jury that such insurance has been obtained, no valid verdict can be returned. . . . It is also known to most intelligent, well-informed men that there is a clause in every accident policy which provides for the insurer furnishing its attorneys and conducting the defense for the insured. . . . It would seem just, reasonable, and proper that if the insurance company is conducting the defense, as every reasonable man connected with the trial knows that it is doing, it should not be an act of extreme impropriety to mention the fact. Another and more sensible policy than that

heretofore prevailing should be adopted by the courts in such cases. It should never be improper to disclose the true defendant in the case, and draw into the open the real rather than the fictitious party. . . . It is puerile and absurd to continue to reverse judgments on account of the disclosure of matters to juries which in all probability they already knew. Reason seasoned with justice, common sense leavened with experience, should be the standard in the administration of the laws of the state and the enforcement of rules for the courts." Carter-Mullaly Transfer Co. v. Bustos (Tex. Civ. App., 1916), 187 S. W., 396, 398; 56 A. L. R., 1549.

The above quotation was applied to statements in the course of the trial, and not to ex parte statements in the jury room; but if such statements about liability insurance in the jury room did not affect the verdict, then a new trial should not be had. We think they did not; hence the assignment must be overruled.

■ ■ There is another reason why the judgment should be affirmed, and that is, the bill of exceptions does not contain all the evidence. The map showing the location of the accident used in the trial before the jury was not made a part of the bill of exceptions and certified to this court, and we have no way of intelligently following the witnesses' testimony. We think the map was very important, and no doubt helped the jury to ascertain the facts. We cannot pass on assignments as to facts without all the testimony. Southern Ry. Co. v. Underwood, 8 Tenn. App., 142; Standard Oil Co. v. Parrish (C. C. A.), 145 F., 829. Judgment will be affirmed if the bill of exceptions shows there was other material evidence before the trial court that was not included in the bill of exceptions. Pepper v. Gainesboro Telephone Co., 1 Tenn. App., 175, 178.

It results that all the assignments of errors are overruled and the judgment of the lower court affirmed. A judgment will be entered in this court for $3,339.35 with interest from January 22, 1932, to the present, in favor of the defendant in error, Jerome Barlar, by next friend, and against the plaintiff in error, Jessie Carr Bourne. The cost of the cause including the cost of the appeal is also adjudged against plaintiff in error, Jessie Car Bourne, and the sureties on her appeal bond.

Faw, P. J., and DeWitt, J., concur.