Joe H. SMARTT, a minor, etc.,
Plaintiff-Appellant,

v.

George R. FLEMING et al., Defendants-
Appellees.

Joe D. SMARTT, Plaintiff-Appellant,

v.

George R. FLEMING et al., Defendants-
Appellees.

Court of Appeals of Tennessee,
Middle Section.

Feb. 25, 1972.

Certiorari Denied by Supreme Court
June 5, 1972.

Frank J. Runyon, Clarksville, Thomas A. Higgins, Nashville, for plaintiffs-appellants.

W. A. Moody, of Branstetter, Moody & Kilgore, Nashville, for defendant-appellee, Joe A. Winn.

Richard H. Batson, of Daniel, Harvill, Batson & Nolan, Clarksville, for defendant-appellee Bd. of Education.

OPINION

PURYEAR, Judge.

These two consolidated cases arose out of an accident which occurred in the

Clarksville-Montgomery County Area Technical School, as a result of which the plaintiff, Joe H. Smartt, then nineteen years of age, sustained a serious injury to his left hand so that portions of his hand had to be amputated.

The defendants, George R. Fleming, James C. Cunningham, Halbert Harvill, Wayne Cross, Bryon Norfleet and Owen Petrie, are members of the Board of Education of the Clarksville-Montgomery County Unified School System and are sued as such. The defendant, Joe A. Winn, is a teacher employed by said School System and he is sued individually.

The suit filed by the plaintiff, Joe H. Smartt, is for damages for personal injuries and the suit filed by his father, Joe D. Smartt, is for loss of services and medical expenses.

The declarations in both cases contain substantially the same averments regarding the way and manner in which the accident occurred, there being only one count in the declaration filed by the son and two counts in the declaration filed by the father.

In the second count of his declaration, the father sues for the use and benefit of the United States of America for medical expenses incurred by the United States of America on behalf of Joe H. Smartt in a Military Hospital pursuant to an Act of Congress known as the Medical Care Recovery Act.

The first declarations filed in each case were withdrawn and plaintiffs obtained leave of the Court to file amended and substituted declarations and it was upon these latter mentioned declarations and the pleas thereto that said suits were tried.

The declarations were filed on December 30, 1970, and on that date the trial Court entered the following order in each case:

"This case came on to be heard on the motions of the plaintiff to be permitted to file an amended and substituted declaration, and to require the defendants to plead their defenses specially; and, on the motion of the defendant school system for the purpose of admitting the allegations in the amended and substituted declaration concerning the existence of such insurance coverage and to strike the same from the declaration and prohibiting any reference to the same before the jury, statement of counsel, and the entire record, from all of which it appears that the various motions should be granted.

It is, therefore, ORDERED and ADJUDGED:

1. That the plaintiff be and hereby is permitted to file an amended and substituted declaration.

2. That the defendants be and hereby are required to plead their defenses specially and to file the same on or before January 20, 1971.

3. That all allegations in the amended and substituted declaration pertaining to the existence of insurance coverage, the same having been admitted fully by the defendant school system, be and hereby are stricken and no reference to the same shall be made at the trial of this case before the jury. To the foregoing action of the Court the plaintiff respectfully excepts." (Tech. Rec. pp. 9, 10)

The declarations in both cases aver that the accident occurred as result of an explosion on April 15, 1969, at the Clarksville-Montgomery County Area Technical School in which the son, Joe H. Smartt, was a student at the time.

Said declarations also contain the following averment:

"At the time of the matters and things complained of in this law suit, the Clarksville-Montgomery County Unified School System had obtained a public liability insurance policy for the purpose of providing insurance coverage and protection against such things as the matters and things complained of in this law suit and

for this reason and to the extent of the policy limits any immunity possessed by the school system has been waived. The insurance policy was issued by Transamerica Insurance Company being Policy No. 36 GLA 32–466–41, in effect on the date of the accident complained of in this lawsuit affording limits of protection to the school system in the amount of $100,000.00." (Tech. Rec. pp. 11, 12)

Both declarations contain averments to the effect that the defendant, Joe A. Winn, was guilty of various acts of negligence which proximately caused the explosion and injury; that the said Joe A. Winn was, at the time thereof, acting as an agent and employee of the defendant, Board of Education, and for whose negligence the said Board of Education is liable.

The declarations also ·contain an averment to the effect that the defendant, Board of Education, was guilty of gross negligence by placing a man in charge of a course requiring use of and experimentation with inherently dangerous objects when said instructor did not have the formal qualifications and knowledge to take the proper safeguards and precautions.

Pursuant to the order of the Court hereinabove set forth, the Board of Education filed a· special plea in each case denying allegations of negligence set forth in the declarations and alleging that the said Joe H. Smartt, who was injured, was guilty of negligence which proximately caused or contributed to the accident resulting in injury to him.

In said plea, the Board of Education did not rely upon the defense of governmental immunity and filed no other plea relying upon that defense.

The cases were consolidated and tried together before the trial Judge and a jury, as a result of which the jury found in favor of the defendants in both cases and the trial Court dismissed said cases.

Thereafter, plaintiffs filed a motion for new trial in each case, which motions were overruled, and these appeals resulted.

Plaintiffs have filed three assignments of error, the first of which is as follows:

"The Trial Court erred in striking all of the allegations in the amended and substituted declarations pertaining to the existence of insurance coverage and in ordering that no reference to the same should be made at the trial of the case before the jury."

In order to properly consider and discuss this assignment it is necessary for us to give a brief summary of the facts of the case and the conflicting theories of the parties.

In April, 1969, and for some time prior thereto the Board of Education of Clarksville-Montgomery County Unified School System operated an area technical school in Clarksville, Montgomery County, Tennessee.

The defendant, Joe A. Winn, was one of the teachers in such school and at the time of the events involved herein he was teaching a class in "Power Mechanics", which included instructions about large engines, jet propulsion rockets and gas turbines propelled by various forms of fuel and other energy sources and the only two students in the class at that time were the plaintiff, Joe H. Smartt, then nineteen years of age, and one Mike Ellis, who was apparently about the same age.

On or about Friday, April 11, 1969, Smartt and Ellis listened to a lecture on the background of rockets and energy sources used to propel rockets and the development of rocket engines. As a part of this course defendant, Winn, demonstrated chemical fuel used as the original source of energy for early forms of rocket engines. As a part of the demonstration a piece of straight metal pipe was closed at one end to be used as a crude prototype of a rocket engine.

Under the guidance and instruction of Winn, the students, Smartt and Ellis, made some black powder by mixing certain designated proportions of potassium nitrate, powdered sulphur and powdered charcoal and poured it into the metal pipe. They then poured some oil in the mixture so as to make a pasty substance of it, after which they used a screwdriver or a round file for the purpose of spreading this pasty mixture on the inside perimeter of the metal pipe.

After this was done, the prototype rocket was placed upon the ground and ignited, as a result of which flame and smoke shot out from the open end of the pipe, but Smartt and Ellis were disappointed with the demonstration because the pipe failed to move as a result of the power thrust.

Therefore, on another day, shortly thereafter, Smartt and Ellis made two more crude prototypes of a rocket under the guidance and supervision of Winn and these prototypes were ignited, but with the same disappointing results in that the pipe failed to move.

Within a short time thereafter, Smartt and Ellis, proceeded to make another prototype rocket, but without the consent or knowledge of Winn or any other teacher in the school, they substituted potassium chlorate for potassium nitrate in making the black powder, since they had been informed that potassium chlorate would provide more power than potassium nitrate.

Smartt was holding the tube of this fourth prototype rocket in his left hand and spreading the pasty black powder around the inside perimeter of the tube with either a file or screwdriver when the tube exploded, thereby seriously injuring his left hand.

Upon trial of the case it was the theory of plaintiffs that after the disappointing demonstrations were held, Smartt and Ellis asked one James Major, a chemistry teacher in the school, if a more powerful fuel for the rocket could be made and that, in the presence of defendant, Winn, Mr. Major told Smartt and Ellis that the use of potassium chlorate instead of potassium nitrate would produce a more powerful thrust; that Smartt and Ellis, under the supervision of defendant, Winn, then proceeded to make another rocket, substituting potassium chlorate for potassium nitrate and otherwise followed substantially the same procedure they had followed in making the other three rockets; that potassium chlorate is a dangerous substance and that the defendant, Winn, should have known that substitution thereof for potassium nitrate was dangerous; that Smartt and Ellis had free access to the storeroom where chemical ingredients were stored and that the defendants were guilty of negligence in failing to adequately supervise and instruct the students in preparation of the rocket and that such negligence was the proximate cause of Smartt's injury.

It was the further theory of plaintiffs that Winn was not qualified to teach the course that he was teaching and that the School Board was guilty of gross negligence in placing a man in charge of teaching a course of study which required the use of and experimentation with inherently dangerous objects; that the School Board had a non-delegable duty to prevent the harm that resulted from such gross negligence.

It was the theory of defendants that Winn was well qualified to teach the course in power mechanics; that he properly supervised the demonstrations; that he provided the students with all of the instruction they needed to make them aware of necessary safety precautions which should be observed and that the accident occurred as a direct result of negligence of the plaintiff, Joe H. Smartt, because he and Ellis secretly obtained from the school storeroom a chemical which had not theretofore been used in demonstration in the course of instruction and that the chemistry teacher, James Major, told them it was a more powerful chemical, but it was dangerous and should not be used.

Winn testified that he did not even know there was any potassium chlorate on the school premises and that he did not know Smartt and Ellis ever entertained any idea of using it.

Some of the material portions of the evidence adduced by plaintiffs is controverted by evidence adduced on behalf of defendants and there is much room for difference of opinion as to what conclusions should be drawn from the whole evidence. In other words, there is evidence in the record which would support verdicts in favor of plaintiffs, but there is also ample evidence to support the verdicts which were rendered by the jury.

Plaintiffs insist that under T.C.A. 20-1328 they were entitled to read their entire declarations to the jury. This Code Section is as follows:

"20-1328. *Declaration may be read to jury.*—In the trial of any civil suit, counsel shall be permitted to read his entire declaration, including the amount sued for, to the jury at the beginning of the lawsuit, and may refer to the same in argument or summation to the jury."

Plaintiffs also insist that it was prejudicial error for the trial Court to strike from their declarations all reference to liability insurance and order that such portions of the declarations should not be read to the jury, citing the unreported opinion of the Supreme Court in Shelton v. Barnes filed at Nashville, on April 5, 1971, and the unreported opinion of this court in that same case filed at Nashville on June 26, 1970.

In the Shelton case the defendant, Town of Dickson, moved to strike an allegation in the declaration that the Town of Dickson carried liability insurance covering its truck which was involved in the accident in question and moved that such allegation not be read or discussed before the jury. This motion was denied and the defendants excepted.

In compliance with the trial Court's order, defendants pled their defenses special-ly, denying that the truck was being operated in a careless or reckless manner, or so as to violate any statutes as alleged. The Town of Dickson admitted that it carried a policy of liability insurance, but pled governmental immunity beyond the policy limits, which appears in the record to be $50,-000.00, the total amount sued for in the case being $541,220.45 damages.

In addition to overruling the motion to strike from the declaration the allegation of insurance and to forbid reading of same to the jury, the trial Judge also declined to instruct the jury that they should ignore such allegation. In its opinion the Supreme Court said:

"At this juncture, let us say that we concur in the Court of Appeals holding that there was no error in the trial judge's ruling on the right of plaintiffs to read all of their declaration. § 20–1328 T.C.A. expressly empowers a plaintiff so to do. Prior to its enactment, the Court of Appeals had held in Wilson v. Maury County Board of Education, 42 Tenn.App. 313 [315], 302 S.W.2d 502, that a trial judge had discretion in a case of this nature to permit or deny the reading of an allegation in a declaration with respect to liability insurance. This statute, which was then enacted for the evident purpose of meeting that holding, quite plainly and clearly authorizes the reading of the entire declaration, and since it was enacted to meet just such a case as this, it must be followed."

There are some important distinctions between the Shelton case and the cases at bar and there is a real question as to whether or not it was error in the cases at bar for the trial Judge to sustain a motion to strike from the declarations all allegations of insurance and to forbid the reading of such allegations to the jury.

However, we are of the opinion that it is not necessary for us to decide this question and we pretermit it, because we have concluded that if it was error for the trial Judge to order such allegations stricken

from the declaration and to forbid reading of such allegations to the jury it was harmless error.

■ The order of the trial Court shows that, as a basis for its motion to strike the allegations as to liability insurance, the Board of Education admitted the existence of such insurance. Moreover, the defendants were required to plead their defenses specially and the Board of Education filed a plea, relying upon several defenses, but not including the defense of governmental immunity.

Therefore, under the provisions of T.C.A. 20–921, the Board of Education waived the right to rely upon the defense of governmental immunity. See Creekmore v. Woodard (1950), 192 Tenn. 280, 241 S.W.2d 397 and Roberts v. Hickson (1960), 48 Tenn. App. 73, 343 S.W.2d 108.

In support of their assignment and in an effort to show that the trial Court's action was not harmless error the plaintiffs filed in support of their motions for new trial an affidavit of one of the jurors, namely, Morris Hogan, which affidavit is as follows:

"2/19/71

I make oath that in the Smartt case, it is my belief that one of the main reasons for the verdict was the belief of several jurors that Mr. Winn or the school board members would personally have to pay any judgment.

Further, he that is Smartt, should not have sued his teacher who was trying to help him.

(s) Morris K. Hogan."

■ This affidavit merely contains an expression of opinion and if we should accept this opinion as correct and agree that, disregarding their oath, the law and evidence, the jury refused to render a verdict against defendants because they did not believe the defendants were insured, then, likewise and in reverse order, we must also agree that the jury would have disregarded their oath, the law and evidence, and rendered a verdict against the defendants if they had known of the liability insurance. This reasoning is not valid and acceptable under prior decisions of this Court and the Supreme Court.

In Bourne v. Barlar (1933), 17 Tenn. App. 375, 67 S.W.2d 751, this Court said:

"Each juror knows that it is unjust and wrong to award a verdict against a defendant simply because he may have insurance and when he does so he stultifies himself and is unworthy to sit as a juror. Each juror who has intelligence enough to be a juror knows that when he, by his verdict, unjustly takes money from a defendant, he does him a very great wrong." (Supra, p. 379, 67 S.W.2d p. 753)

In Marshall v. North Branch Transfer Co. (1933), 166 Tenn. 96, 59 S.W.2d 520, the Supreme Court said:

"The case before us involves more than mere comment by the jury on the fact of insurance.

At a time when the members of the jury were not agreed as to defendant's liability for plaintiff's injuries, 'the matter of insurance was discussed for some time,' and some of the jurors urged the assumed fact of insurance upon their dissenting fellow jurors as a reason for the surrender of the conclusion they had gained from the evidence. The language is that some of the jurors 'kept insisting that on account of the insurance' a verdict for the plaintiff should be agreed to and rendered.

We think this was positive misconduct on the part of the jury, calculated to prejudice the rights of the defendant and to defeat the proper performance of the jury's duty to render an impartial verdict on the law and evidence submitted to them in open court. And when it is shown by the uncontradicted statements of four members of the jury that they

were thereby induced to assent to a verdict against which they had theretofore held out, we think a case of misconduct, affirmatively shown to have affected the result of the trial, is made to appear. A verdict so influenced and brought about should not be permitted to stand." (Supra, pp. 100, 101, 59 S.W.2d p. 521)

Our harmless error statute provides as follows:

"27-117. *Technical errors affecting result.*—No verdict or judgment shall be set aside or new trial granted by any appellate court, in any civil or criminal cause, on the ground of error in the charge of the judge to the jury, or on account of the improper admission or rejection of evidence, or for error in acting on any pleading, demurrer, or indictment, or for any error in any procedure in the cause, unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial."

Since this statute was passed this Court has held in several cases that errors based on probabilities are not grounds for reversal but there must be an affirmative showing that the alleged error affected the results of trial. Monday v. Millsaps (1953), 37 Tenn.App. 371, 264 S.W.2d 6; Management Services, Inc. v. Hellman (1955), 40 Tenn.App. 127, 289 S.W.2d 711; Lyman v. American National Bank & Trust Company (1960), 48 Tenn.App. 328, 346 S.W.2d 289.

After a consideration of the entire record in this case, we are convinced that if it was error for the trial Judge to sustain the motion to strike from the declarations all allegations of insurance and forbid the reading of same to the jury, such was harmless error and did not affect the results of the trial.

Therefore, the first assignment of error is respectfully overruled.

Assignments of error two and three are as follows:

## II

"The plaintiffs' rights were prejudicially affected by the closing argument of the attorney for the defendant, Joe A. Winn, by the improper suggestion to the jury that the defendants would have to pay any judgment personally.

## III

The Trial Court erred in failing to admonish and instruct the jury, at plaintiffs' request, to disregard the improper and prejudicial argument of the attorney for the defendant, Joe A. Winn."

Since these two assignments raise substantially the same question we will consider them together.

During his argument to the jury counsel for the defendant, Winn, made the following remarks:

"There is one other thing. Many lawsuits have more repercussions than just this coming in to get money. What duty is Mr. Higgins attempting to put on all the teachers of Montgomery County, Davidson County, all the ninety some odd counties of the state? Does he want to put them in a position that if anything happens in their school, they can be hailed into court and tried by hindsight? That's what we are doing now. Are they trying to put the teacher in a position that they have to take abnormal steps to stop the negligent misbehavior of the students? Isn't that what he is trying to do, that a teacher must be able to foresee the future, to guess the future, to foretell what's going to happen and then head it off even though a student does wrong? Are they going to be hailed into court? Are they going to be asked to pay for

it? Is that what they are trying to do? (B. of E. p. 404)

At conclusion of this attorney's argument the jury was excused and counsel for plaintiffs objected to the above quoted argument of counsel and made the following motion:

"It was highly prejudicial, may it please the Court, and I'm asking the Court to instruct them that there is no evidence on that point and it's not a proper statement." (B. of E. p. 407)

In response to said motion the following colloquy occurred between counsel and the trial Judge:

"THE COURT: Well, of course whatever I say to the jury creates another implication that some insurance company is going to pay it.

MR. RUNYON: Well, possibly, your Honor, that's true. But we didn't open this box of pandora. We didn't bring this up. We have now been prejudiced without an instruction.

MR. HIGGINS: If your Honor please, there is an order—

THE COURT: If I signed it.

MR. HIGGINS:—an order in this case which specifically prohibits us from referring to insurance and we have abided by it.

THE COURT: Well, in my instructions I'll give them something in a general nature. I'm not going to instruct the jury who has to pay or who does not have to pay but they can't speculate on who does. That's as far as I can go or we get into an error on insurance." (B. of E. pp. 408, 409)

In his general charge to the jury the trial Judge said:

"And you must not speculate or try to determine from remarks that you have heard as to who or who will not have to pay a judgment if one is returned." (B. of E. p. 452)

Counsel for plaintiffs submitted no special request for any additional instruction on this particular subject.

Counsel for plaintiffs did, in fact, submit ten special requests for additional instructions and the trial Judge charged all but one of these requests and the one which was refused did not pertain to any of the questions raised on these appeals.

It has been held that much discretion is vested in the Judge presiding at the trial in governing the arguments of counsel and that it is within the limit of his discretion to determine whether or not he will stop counsel at the time or wait and correct the error in his charge to the jury. Cosmopolitan Life Ins. Co. v. Woodward (1928), 7 Tenn.App. 394.

In Klein v. Elliott (1969), 59 Tenn.App. 1, 436 S.W.2d 867, this Court said:

"The allowance or denial of mistrial (new trial) on grounds of misconduct of counsel is discretionary with the trial judge, and that discretion will be reviewed only in exceptional cases. Prewitt-Spurr Mfg. Co. v. Woodall, 115 Tenn. 605, 90 S.W. 623 (1905). In view of the harmless error statute, T.C.A. Sec. 27–117, and the lack of showing that the misconduct actually affected the outcome of the trial, there can be no reversal on this ground." (Supra, 436 S.W.2d p. 880)

In support of these two assignments, counsel for plaintiffs again refer to the affidavit of juror, Morris Hogan, the text of which is hereinabove quoted, but as we have heretofore said, this affidavit is merely an expression of opinion. Furthermore, it makes no direct reference to the improper argument of counsel for the defendant, Winn.

In our opinion, the averments of this affidavit are not sufficient to affirmatively

show that improper argument affected the results of trial, especially in view of the above quoted instruction by the trial Judge to the jury.

■ There being no affirmative showing that such argument of counsel affected the results of trial, we hold that this was harmless error and the second and third assignments of error are respectfully overruled.

The assignments of error having been considered and overruled, the judgments of the trial Court are affirmed and the plaintiffs will pay the costs of these appeals.

SHRIVER, P. J., and TODD, J., concur.