Mrs. Ann HENSHAW, Plaintiff-Appellant,

v.

CONTINENTAL CRESCENT LINES, INC.,
Defendant-Appellee.

Joe HENSHAW, Plaintiff-Appellant,

v.

CONTINENTAL CRESCENT LINES, INC.,
Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

March 30, 1973.

Certiorari Denied by Supreme Court
June 18, 1973.

Allen Shoffner, Shelbyville, for plaintiffs-appellants.

James Clarence Evans, Nashville, for defendant-appellee.

## OPINION

SHRIVER, Presiding Judge.

### THE CASE

These are appeals from judgments of the Circuit Court of Bedford County in two actions for damages arising out of the fall of a passenger from the steps of a bus operated by defendant, a common carrier. Mrs. Ann Henshaw, the passenger, commenced her action to recover for personal injuries received by her when she fell while descending the steps of the bus. Her husband, Joe Henshaw, brought suit for loss of services of his wife resulting from said accident and injuries.

The cases were consolidated for trial before Honorable Robert J. Parkes, Circuit Judge, and a jury, and resulted in a verdict and judgment in favor of the defendant in each case, from which plaintiffs perfected their appeals to this Court and have assigned errors.

The declarations charge common law negligence, including failure to maintain suitable and adequate terminal facilities, failure to provide rubber mats or other protective devices on the steps of the bus to help prevent passengers from slipping and falling, failure to provide adequate lighting for the boarding steps, failure to maintain the bus in a safe and sanitary condition, and failure to warn Mrs. Henshaw of the hazardous condition of the wet and worn steps.

Count Two of the declarations charge statutory negligence in failing to comply with the safety rules and regulations issued by the Tennessee Public Service Commission pursuant to statute.

The defendant filed a general issue plea of not guilty in each case and, following the motion of plaintiffs and the order of the Court, defendant filed special pleas in which the defense of contributory negligence was pled.

### THE FACTS

There is very little dispute as to the essential facts concerning the accident in question. The chief issue is as to the duties of the defendant concerning plaintiff, Mrs. Henshaw, as a passenger, and as to whether defendant was guilty of any proximate negligence resulting in plaintiff's injuries.

As is alleged in the declaration, Mrs. Henshaw, in the early morning of February 16, 1970, was taken by her son to defendant's bus terminal in Shelbyville, Tennessee, for the purpose of boarding defendant's bus as a passenger for a return trip to her home in Oklahoma. Plaintiff purchased and was issued a passenger ticket and, shortly before 6:00 A.M., on said morning, defendant began receiving passengers aboard its bus which was parked in a vacant lot near a small office which was used for the sale of tickets. When plaintiff and her son arrived at the bus station, it was dark and raining and she testified that it was necessary for her to walk over a rough wet area in order to board the bus and that the bus steps were wet and slick from the rain and from people tracking onto them.

Plaintiff boarded said bus and gave her ticket to the defendant's driver who was standing inside near the driver's seat. She then decided to go back down the steps of the bus to say goodbye to her son who was checking her luggage. She testified that she took hold of the handrail as she started to descend the steps and that, as she proceeded down, her right foot slipped on the last step and she fell to the ground. She further testified about her extended hospitalization and convalescence as a result of a broken leg which she sustained in the fall and which necessitated her wearing a cast on the leg for ten months.

Mrs. Henshaw's son, Phillip Cook, testified that the area around the bus station

and the parking area was dark and that the parking lot had pot-holes in it. He also stated that the steps of the bus were "mighty dark" and that he observed the steps after his mother's fall and they appeared to be wet and worn.

He also testified that the steps appeared slick and, when objection to the question was sustained, he was asked if he noticed anything about whether the steps were worn or not, or were slick or smooth, and he answered: "It appeared to me like it was worn." On cross-examination, he testified that the steps appeared to be vinyl or linoleum and he did not know whether or not they were corrugated.

Eugene Alvin Martin, Jr., one of the witnesses called by plaintiffs, and who, as a passenger, had boarded the bus before Mrs. Henshaw, testified that he did not recall any lights around the bus steps and that the steps were damp and wet.

There was medical testimony by two doctors as to the treatment of Mrs. Henshaw's injuries and the resulting physical impairment or shortening of her leg from the injuries.

Relevant sections of the Tennessee Public Service Commission's rules and regulations were read into evidence.

The bus driver, Elmer Kell, testified that he had turned on both the dome lights and the step lights on the bus and that they were burning when Mrs. Henshaw fell. At the time in question, he was standing inside the front of the bus making out some reports and had been taking up and reading tickets as passengers came aboard and that, for these duties, he necessarily had to have light. He described the steps as having "hard rubber treads with grooves in them", which were designed to prevent slipping.

He stated that he did not warn Mrs. Henshaw but had no occasion to do so since Mrs. Henshaw had already climbed up the steps and into the bus. When she handed him her ticket, she suddenly decided to go back down the steps and, thereupon, turned around and started down said steps, as she said, to talk with her son and kiss him good-bye.

We do not find any testimony suggesting that the driver was forewarned or had reason to anticipate that Mrs. Henshaw was about to turn around and descend the steps, hence, no reason is suggested as to why he should have warned her of possible danger.

Mr. F. W. Walker, defendant's General Manager, testified that the treads on the steps of the bus in question at the time of the trial were the same treads which had been on it at the time of the accident and that he had just recently examined them and, in his opinion, they did not need changing. Exhibits Nos. 14 to 18, inclusive, are photographs showing the steps, as well as the treads on same, which appear to be corrugated. The locations of some six step lights are also shown, which lights, according to the testimony of the driver, were turned on at the time of the accident, and there is no testimony to the contrary.

The case was submitted to the jury which returned a verdict, as shown at page 225 of the transcript, as follows:

"WHEREUPON, the jury retired from the court room at 10:50 A.M., and returned at 11:45 A.M., when the following proceedings were had:

THE COURT: (Paper handed to Court)

"Gentlemen of the jury, your foreman reports that 'We, the jury, are unanimous in the opinion that the accident was a misadventure' * and that you do not award the plaintiff any recovery. If this is your verdict, each of you hold up your right hand, please.

(All jurors raise their right hand.)

THE COURT: All right, gentlemen, thank you."

A footnote states: ' * Words in quotes were written on paper.' "

## ASSIGNMENTS OF ERROR

There are four assignments of error, as follows:

"1. The Court erred in instructing the jury as follows, to-wit:

'Now, there has been advanced by the defendant that this accident and these injuries were caused or was the result of a misadventure. Under the law of misadventure is where there is no negligence on the part of either party. An accident that occurred in this manner is called a misadventure, and, of course, a misadventure is not something that you can recover for, because, as I said, this is a situation where there is no negligence, . . .'

2. The 'verdict' returned by the jury in this case, handwritten on a piece of paper and handed to the Court, in the following words: 'We, the jury, are unanimous in the opinion that the accident was a misadventure,' is invalid as a verdict; and the Court erred in entering judgments dismissing plaintiffs' actions based upon said 'verdict', and in overruling plaintiffs' motions for a new trial in which the invalidity of the 'verdict' was asserted as one of the grounds therefor.

3. The Court erred in failing to instruct the jury upon an important theory of plaintiffs' cases, namely, the Second Count of the declarations based upon a violation of the rules and regulations of the Tennessee Public Service Commission duly adopted pursuant to Section 65–1515 of the Tennessee Code Annotated, all of which was duly pleaded, proven, and argued in the case.

4. The Court erred in instructing the jury as follows, to-wit:

'In other words, a defendant in this particular case, if he knows, or by the exercise of reasonable care, knows of a dangerous condition, then, of course, it is his duty to warn people about that.' [Emphasis added]"

■ As to Error No. 1, it is argued by counsel for appellant that no authority has been found in Tennessee approving instructions to the jury upon "misadventure", or even upon "unavoidable accident", and it further argued that the weight and trend of cases in other jurisdictions is to hold that such instructions to the jury is error.

A leading case on the subject is Butigan v. Yellow Cab Co., 49 Cal.2d 652, 320 P.2d 500, 65 A.L.R.2d 1, wherein it was held that the giving of instructions to the jury on "unavoidable accident", where a claim by a passenger against a Cab Company was involved, constituted reversible error. The Court stated that the instruction is not only unnecessary but is confusing and may give the impression to the jury that it constitutes a separate ground of non-liability of the defendant.

In the Butigan case there were two strong dissenting opinions, pointing out that instructions on unavoidable accidents had been given by Trial Courts for many years, which probably led to a better understanding of the issues by the jurors. It is further to be noted that, in Butigan, the majority held that whether the instruction in a particular case is prejudicial and requires reversal, depends upon all of the circumstances of the case, including the evidence and other instructions given.

Counsel for plaintiffs also cites cases from Colorado, Oregon, Virginia and Montana dealing with intructions to the jury concerning unavoidable accident or misadventure, in which jurisdictions the California (Butigan) case was followed with certain distinctions and reservations.

Counsel for defendant calls attention to the case of Campbell v. E. T. & W. N. C. Transportation Co., 23 Tenn.App. 332, 132 S.W.2d 355, in which this question was dealt with in a case wherein Mrs. Campbell

was a passenger on a bus of the defendant Motor Company, traveling from Elk Park, North Carolina to Johnson City, Tennessee, when the bus had engine trouble and it was decided to transfer the passengers to another bus for the remainder of the journey. Mrs. Campbell was a heavy woman, weighing two hundred and fifty pounds, and had a weak left knee, and she told the bus driver that she would have to have assistance in getting off the bus. The driver agreed to assist her and took hold of her left arm and directed her to step off on her right, or sound, leg. She took hold of the handbar on the side of the door with her right hand and when she was in the act of stepping down, she lost her grip on the handbar and fell to the ground and was injured.

She filed suit and obtained a jury verdict and judgment for $5,000.00. On motion for a new trial the judgment was set aside and a directed verdict for the defendant was entered. On appeal the judgment for the defendant was affirmed.

The opinion of the Court of Appeals, among other things, stated:

"From this testimony, the court is of the opinion that the prime and proximate cause of the fall was the fact that the plaintiff lost her hold upon the rod, and as she stated, 'pulled me sideways and I fell sideways.' The company's servants could not reasonably anticipate such an occurrence, and for this reason, in the court's opinion, cannot be charged with negligence in not so anticipating it. This being true, the company was not accountable for the prime and proximate cause of the injury and it violated no duty owed to the plaintiff by contract or tort which could be connected with the prime and proximate cause of the accident. *The plaintiff's suit is not dismissed because of her contributory negligence, for her hand slipping and the loss of her hold upon the handle bar was a misadventure and not a negligent act upon her part. She was not responsible for this misadventure, but neither is the company, and it being the cause of the acci-dent she has failed to show a breach of duty on the part of the carrier.* These facts render inapplicable authorities cited by the plaintiff-in-error for the purpose of acquitting her of contributory negligence. The court holds that she was not guilty of contributory negligence."* [Emphasis supplied]

In the case of Bourne v. Barlar, 17 Tenn.App. 375, 67 S.W.2d 751, the Court held that, where the evidence was conflicting as to whether a boy on a bicycle was injured when he ran out of an alley into the path of a motorist or was run down while traveling on the road ahead of the motorist, and where it was contended by the defendant that the accident was due either to the plaintiff's contributory negligence or that the accident was unavoidable, these questions were for the jury.

It thus appears that the Tennessee Courts have recognized and followed the majority rule, which is stated in 65 A.L.R.2d 24, as follows:

"In most jurisdictions in which the question has arisen, an 'accident' instruction (that is, one stating the non-liability of the defendant in case the occurrence was an 'accident', a 'mere accident', an 'unavoidable accident', or other like instruction employing the word 'accident') may correctly be given in a motor vehicle case appropriate under the local decisions in its facts and circumstances as disclosed by the evidence."

It results that Assignment No. 1 is overruled.

■ The second assignment attacks the form of the verdict which was written on a piece of paper and handed to the Court by the foreman of the jury, and which writing stated:

"We, the jury, are unanimous in our opinion that the accident was a misadventure."

We have quoted hereinabove the transcript of the record concerning the jury

verdict, and attention is directed to the language of the Court wherein he addressed the jury, stating:

"Your foreman reports that, 'We, the jury are unanimous in the opinion that the accident was a misadventure', and that you do not award the plaintiff any recovery. If this is your verdict, each of you hold up your right hand, please."

Whereupon, the jurors raised their right hands.

The record does not reflect that the plaintiffs sought to have the jury retire and consider further of their verdict and, as was his duty, it appears that the Trial Judge resolved any question with respect to what the jury verdict was and interpreted it to be a verdict in favor of the defendant. He, accordingly, entered a judgment for the defendant.

We cannot agree with the argument of counsel for the plaintiffs that this is not a general verdict and is, therefore, invalid.

In Templeton v. Quarles, 52 Tenn.App. 419, 432, 374 S.W.2d 654, 660, the Court stated:

" 'It is the duty of the court in construing verdicts to give them the most favorable interpretation and to give effect to the intention of the jurors if that intention be permissible under the law and ascertainable from the phraseology of the verdict. If after an examination of the terms of the verdict the court is able to place a construction thereon that will uphold it, it is encumbent upon the court to do so.' Tennessee Procedure in Law Cases, Section 1504, page 573;

Black v. Nashville Banner Publishing Company, 24 Tenn.App. 137, 141 S.W.2d 908; Briscoe v. Allison, 200 Tenn. 115, 290 S.W.2d 864."

Assignment No. 2 is respectfully overruled.

■ As to Assignment No. 3, counsel for plaintiffs have cited no authority to support same and it is to be pointed out that the Commission's rules are essentially a restatement of the common law duty of a common carrier to its passengers and these duties were amply covered in the charge of the Court.

Furthermore, counsel offered no special request in regard to these duties at the conclusion of the charge of the Court. It results that Assignment No. 3 is overruled.

■ Assignment No. 4 charges error because at one point in the charge of the Court to the jury, reference is made to the exercise of reasonable care on the part of the defendant driver. However, it is to be noted that the charge of the Court fully covered the question of the degree of care required of defendant and pointed out that it was required to exercise the highest degree of care. Thus, we think the charge was full and satisfactory in this respect and that there is no merit in Assignment No. 4. It is, accordingly, overruled.

All assignments being overruled, it results that the judgment of the Trial Court is affirmed.

Affirmed.

PURYEAR and TODD, JJ., concur.